UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNALISA NELSON, | No. C-10-0101 EMC |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MICHAEL J. ASTRUE, | |
| Defendant. | **(Docket Nos. 13, 14)** |
| _____/ | |

In June 2005, Plaintiff Annalisa Nelson filed an application for disability insurance benefits. Ms. Nelson has now exhausted her administrative remedies with respect to her claim of disability. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Ms. Nelson has moved for summary judgment, and the Commissioner has filed a cross-motion. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** the Commissioner's motion and **DENIES** Ms. Nelson's.

## I.   FACTUAL & PROCEDURAL BACKGROUND

In June 2005, Ms. Nelson filed an application for disability insurance benefits, alleging disability as of April 5, 2005. *See* AR 83 (application). Ms. Nelson's application was initially denied in August 2005, *see* AR 55 (notice of disapproved claims), and again on reconsideration in March 2006. *See* AR 46 (notice of reconsideration). Ms. Nelson then sought an administrative hearing before an administrative law judge ("ALJ"). *See* AR 44 (request for hearing by ALJ). A hearing was held before ALJ Richard Laverdure on May 10, 2007. *See* AR 404 *et seq.* (ALJ hearing).

On September 4, 2007, the ALJ held that Ms. Nelson was not disabled under the Social Security Act. *See* AR 18-23 (ALJ decision). The ALJ evaluated Ms. Nelson's claim of disability using the five-step sequential evaluation process for disability required under federal regulations. *See* 20 C.F.R. § 404.1520.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At step one, the ALJ found that Ms. Nelson had not engaged in substantial gainful activity since April 5, 2005, the alleged onset date. *See* AR 19 (ALJ decision). At step two, the ALJ determined that Ms. Nelson suffered from the following severe impairments: left rotator cuff tear and "frozen shoulder," status post repair, and cervical and lumbar disc disease (with minor disk protrusions). *See* AR 19. The ALJ concluded, as part of step three, that Ms. Nelson did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* AR 19. As for step four, the ALJ held that Ms. Nelson had the residual functional capacity to perform light work, as defined by the regulations, *see* 20 C.F.R. §§ 404.1567(b), "with an opportunity to rotate between sitting, standing and walking for 10 minutes each hour for comfort; no overhead reaching, no full-extension reaching, no pushing or pulling, and no repetitive lifting or carrying with the left, dominant upper extremity; and no ladder, ramp, or stair climbing." AR 20. Based on this residual functional capacity, the ALJ concluded, at step five, that Ms. Nelson was not capable of performing her past relevant work. *See* AR 21. However, the ALJ also concluded, based on the hearing testimony of a vocational expert,

1  that there were other jobs – namely ticket seller and order clerk, food/beverage – existing in
2  significant numbers in the national and local economy that Ms. Nelson could perform consistent
3  with her medically determinable impairments, functional limitations, age, education, and work
4  experience.  *See* AR 21-22.  Accordingly, the ALJ deemed Ms. Nelson not disabled at any time on
5  or before the ALJ's date of decision.  *See* AR 23.
6        Thereafter, Mr. Nelson sought review of the ALJ decision but her request for review was
7  denied by the Appeals Council in October 2009.  *See* AR 7 (notice of Appeals Council action).  This
8  petition ensued.

## II. DISCUSSION

10  As the Ninth Circuit has explained, a court

> may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  A court review[s] the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision. . . . . [W]here the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.

16  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted); *see also*
17  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).
18        In the instant case, Ms. Nelson argues that the ALJ's decision was erroneous for the
19  following reasons: (1) the ALJ failed to comply with Social Security Ruling ("SSR") 00-4p and (2)
20  the ALJ erred in rejecting her credibility.  Each argument is addressed below.
21  A.    SSR 00-4p
22        As noted above, the ALJ, in evaluating Ms. Nelson's residual functional capacity,
23  specifically determined that she could not do overhead reaching or full-extension reaching with
24  respect to the dominant left upper extremity.  *See* AR 20 (ALJ decision); *see also* Mot. at 6
25  (admitting that the ALJ found such).  Ms. Nelson argues that, given this limitation, she could not
26  perform the job of ticket seller or order clerk, food/beverage, as the vocational expert testified
27  because, as described in the *Dictionary of Occupational Titles* ("DOT"), both jobs require reaching.
28  Ms. Nelson acknowledges that, under SSR 00-4p, an ALJ may credit a vocational expert's testimony

1  over the DOT, where the two are in conflict.  However, she contends that, under the ruling, an ALJ

2  cannot rely on vocational expert testimony where the two are in conflict *and* the ALJ has failed to

3  explore and explain how that conflict was resolved, which she contends happened here.  Thus, Ms.

4  Nelson's basic argument is that the ALJ erred by failing to comply with SSR 00-4p.

5       Social Security Rulings "are interpretative rulings and do not have the force of law."  *Chavez*

6  *v. Department of Health & Hum. Servs.*, 103 F.3d 849, 851 (9th Cir. 1996).  Nevertheless, courts

7  afford them deference "unless they are plainly erroneous or inconsistent with the [Social Security]

8  Act or regulations."  *Id.*  In the instant case, the Commissioner has not contended that SSR 00-4p is

9  plainly erroneous or inconsistent with the Act.  The Court therefore affords SSR 00-4p deference.

10       SSR 00-40 provides in relevant part as follows:

> [O]ccupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled.

15  SSR 00-4p.

16       In the instant case, the Court finds that there was an arguable conflict between the vocational

17  expert's testimony and the DOT.  The vocational expert testified, in essence, that Ms. Nelson could

18  perform the jobs of ticket seller and order clerk, food/beverage.  However, the DOT specifies that

19  both jobs involve reaching,[1] and Ms. Nelson was barred from overhead reaching and full-extension

20  reaching with respect to the dominant left upper extremity.

21       In its papers, the Commissioner argues that there was no possibility of a conflict because

22  "the DOT contemplates only a generic category of 'reaching'" and "does not quantify 'overhead'

23  reaching [or] 'full extension reaching.'"  Opp'n at 8.  The Court is not persuaded.  While the DOT is

24  not specific in defining the term "reaching," common parlance suggests that the term includes

25  reaching in all directions.  The authority that Ms. Nelson cites -- *i.e.*, *The Revised Handbook for*

---

[1] For a ticket seller, the DOT states that there is constant reaching (*i.e.*, 2/3 or more of the time).  For an order clerk, food/beverage, the DOT states that there is frequent reaching (*i.e.*, 1/3 to 2/3 of the time).  *See* Mot., Ex. 1 (DOT descriptions).

4

*Analyzing Jobs* (describing reaching as "extending hand(s) and arm(s) in any direction) and Social Security Ruling 85-15 (describing reaching as "extending hands and arms in any direction") -- while not dispositive because neither purports to interpret the DOT, supports the notion that reaching as commonly understood includes reaching in all directions.  Moreover, the fact that the DOT does not contain any qualifiers in reference to reaching might actually suggest that the term should be broadly construed.  *Cf. Fortes v. Astrue*, No. 08cv317 BTM(RBB), 2009 U.S. Dist. LEXIS 84770, at *6-7 (S.D. Cal. Sept. 17, 2009) (concluding that "Plaintiff's inability to perform frequent handling/ fingering with her right hand (her dominant hand in fact) was inconsistent with [the] requirements" in the DOT because, even though "the DOT does not indicate that reaching, handling, or fingering must be performed bilaterally," it also does not "state that reaching, handling, or fingering need only be done on one side").

That an arguable conflict existed, however, is not enough for Ms. Nelson to prevail.  That conflict, under Ninth Circuit law, had to be *apparent*.  *See Mickelson-Wurm v. Commissioner SSA*, 285 Fed. Appx. 482, 486 (9th Cir. 2008) (stating that an ALJ "must clarify the discrepancy . . . only where there is an apparent unresolved conflict that arises between the vocational expert's testimony and the DOT"); *see also* SSR 00-4p (referring to an apparent conflict).  In the instant case, the arguable conflict was not sufficiently apparent.

First, neither party, including Ms. Nelson herself, cited the arguable conflict on the issue of reaching or otherwise brought the issue to the ALJ's attention at the hearing.[2]

Second, the arguable conflict was not otherwise obvious to the ALJ.  *See Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (stating that, where the ALJ is not alerted to a conflict, then the conflict must be "obvious enough that the ALJ should have picked up on [the conflict] without any assistance" before SSR 00-4p is triggered).  *But see Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir. 2008) (stating that "nothing in applicable Social Security regulations requires the administrative

---

[2] In accordance with SSR 00-4p, the ALJ did ask the vocational expert at the hearing to tell him "if at any time your opinions differ in any regard from the DOT or other sources." AR 425 (ALJ hearing); *see also* SSR 00-4p (stating that, "[a]t the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency" between the vocational expert testimony and the DOT). Ultimately, the vocational expert did not address the arguable conflict or the reaching issue.

5

law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge"); *Saunders v. Commissioner of Soc. Sec.*, No. 1:08-cv-1136, 2010 U.S. Dist. LEXIS 27488, at *12 (W.D. Mich. Mar. 23, 2010) (noting that the claimant's "counsel had the opportunity and the duty to cross-examine the VE and call the ALJ's attention to any discrepancies between the VE's testimony and the DOT, and he failed to do so"). The conflict between the vocational expert testimony and the DOT was not obvious because, as noted above, the DOT did not describe with any specificity the reaching required for the positions of ticket sellers and order clerks, food/beverage. The DOT did not say that overhead reaching, full-extension reaching, or reaching with both hands (or with the dominant hand) was required. Furthermore, there is nothing about the job of ticket seller or order clerk, food/beverage, which would lead intuitively to the conclusion that overhead or full-extension reaching with both hands (or the dominant hand) is required. *See Schneeberg v. Astrue*, 669 F. Supp. 2d 946, 960 (W.D. Wisc. 2009) (stating that "[i]t is impossible to conclude that the administrative law judge should have picked up on a conflict where the vocational expert stated that there were unskilled jobs available in the various occupations she identified and where none of the job titles (information clerk, receptionist, general office clerk and file clerk) lead intuitively to the conclusion that they are semi-skilled").

Finally, even if the conflict were obvious, SSR 00-4p only requires that an ALJ elicit a reasonable explanation for the conflict before relying on the vocational expert evidence. Here, a reasonable explanation was elicited. Assuming that reaching broadly includes overhead and full-extension reaching, the vocational expert testified at the hearing that a person with Ms. Nelson's limitations could accomplish the full-extension reaching, and therefore presumably the overhead reaching, with her nondominant upper extremity. *See* AR 437-39 (ALJ hearing) (testifying, *e.g.*, that "a ticket seller, . . . if they had to do full extension, could use their non-dominant . . . upper extremity"). *See, e.g.*, *Huerta v. Astrue*, No. 2:09-CV-001-PRC, 2009 U.S. Dist. LEXIS 108306, at *58 (N.D. Ind. Nov. 19, 2009) (noting that "Plaintiff has not made any showing that the alleged conflict was 'apparent' at the hearing" and that, "[b]ecause the VE identified and explained the inconsistency with the hand packager job, it is reasonable to expect that this same VE would have

articulated any inconsistencies between the DOT and the other two job categories"); *Fortes*, 2009 U.S. Dist. LEXIS 84770, at *6-7 (noting that "Plaintiff's inability to perform frequent handling/ fingering with her right hand (her dominant hand in fact) was inconsistent with [the DOT] requirements"; adding that "[p]erhaps the VE could have testified that in specific cashier or host jobs, frequent use of the dominant hand is not necessary").

Accordingly, the Court rejects Ms. Nelson's argument that the ALJ erred in failing to comply with SSR 00-4p.

B.  Credibility

In his decision, the ALJ found that Ms. Nelson's testimony about her pain and symptoms arising from her impairments was only partially credible. *See* AR 20-21, 34 (ALJ decision). Ms. Nelson argues that this finding was erroneous.

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." The claimant, however, "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

In the instant case, the ALJ indicated that Ms. Nelson's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *See* AR 20 (ALJ decision) (stating that Ms. Nelson's "allegations are generally consistent with the findings reported in the record before me"). In other words, Ms. Nelson had satisfied the first step of the above credibility analysis. But the ALJ went on to conclude that Ms. Nelson had not completely satisfied the second step, holding that her statements about the severity of her symptoms were only partially credible. In arriving at the conclusion that Ms. Nelson was only partially credible, the ALJ took note of (1) the

1 limited medical evidence supporting the alleged symptoms, (2) the limited treatment for the
2 impairments, (3) Ms. Nelson's daily activities, which included a variety of household chores such as
3 shopping, carrying groceries short distances, vacuuming, cleaning the kitchen and bathroom, and
4 making her bed, and (4) Ms. Nelson's statement to the Commissioner that her low back pain had
5 ceased. *See* AR 21.

6     In her papers, Ms. Nelson argues first that the ALJ erred in rejecting her subjective pain
7 testimony on the basis of objective medical evidence. This argument is without merit. While it is
8 true that "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully
9 corroborated by objective medical evidence, the medical evidence is still a relevant factor in
10 determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261
11 F.3d 853, 857 (9th Cir. 2007) (emphasis added); *see also* 20 C.F.R. § 404.1529(c)(1)-(2) (providing
12 that, "[w]hen the medical signs or laboratory findings show that you have a medically determinable
13 impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must
14 then evaluate the intensity and persistence of your symptoms" and, "[i]n evaluating the intensity and
15 persistence of your symptoms, we consider all of the available evidence, including . . . the signs and
16 laboratory findings, and statements from . . . your treating or nontreating source"). In the instant
17 case, the ALJ did not conclude that Ms. Nelson was partially credible based on medical evidence
18 alone. Rather, as indicated above, that was only one factor that the ALJ took into consideration.

19     Second, Ms. Nelson contends that the ALJ erred in rejecting her subjective pain testimony
20 based on the level of her daily activity. According to Ms. Nelson, her "meager activities" do not
21 translate to "the ability to perform gainful work activity over a 40 hour, five day work week." Mot.
22 at 17. The Court does not agree. Under Ninth Circuit law, "daily activities may be grounds for an
23 adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in
24 pursuits involving the performance of physical functions that are transferable to a work setting.'"
25 *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th
26 Cir. 2005) (stating that adverse credibility finding based on activities may be proper "if a claimant
27 engages in numerous daily activities involving skills that could be transferred to the workplace").
28

In the instant case, the ALJ looked to Ms. Nelson's responses to an exertional daily activities questionnaire in determining her daily activity. *See* AR 21 (ALJ decision) (citing responses to questionnaire); AR 127-29 (responses to questionnaire). The responses reflected, as the ALJ noted, that Ms. Nelson engaged in a variety of household chores, including shopping, carrying groceries short distances, vacuuming, cleaning her kitchen and bathroom, and making her bed.[3] AR 21, 127-129. These activities in which Ms. Nelson engaged, as reflected in her responses to an exertional daily activities questionnaire, are transferable to a work setting. *See, e.g.*, *Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (indicating that the claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of his ability to work); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that, "if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working"). *Compare Orn*, 496 F.3d at 639 (describing daily activities of the claimant as "sometimes" reading, watching television, and coloring in coloring books, which failed to establish that the claimant "has 'transferable' skills to be a surveillance system monitor," a "position that requires sustained concentration and attention, as well as the ability to act immediately in emergencies").

Third, the ALJ also took into account the fact that Ms. Nelson used only over-the-counter medications and Lidocaine patches to treat her pain and even reported to the Commissioner that her low back pain at least had ceased. *See* AR 21 (ALJ decision); AR 129 (responses to questionnaire); AR 132 (disability report -- appeal); *see also* AR 419-20 (ALJ hearing) (Ms. Nelson testifying that she uses heat and ice for treatment but not medication). Consistent with SSR 96-7p and Ninth Circuit case law, those factors were appropriate for the ALJ to consider. *See* SSR 96-7p (listing as factors to consider in determining credibility, *inter alia*, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms' and "[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or

---

[3] Ms. Nelson also engaged in daily exercise, and, at the hearing, Ms. Nelson elaborated that she would exercise both in the morning and the afternoon. *See* AR 418 (ALJ hearing).

other symptoms"); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

Accordingly, the ALJ offered "specific, clear and convincing reasons" for refusing to fully credit Ms. Nelson's testimony about her pain and symptoms. *Lingenfelter*, 504 F.3d at 1035-36.

### III. CONCLUSION

For the foregoing reasons, the ALJ did not fail to comply with SSR 00-4p and the ALJ did not err in partially rejecting Ms. Nelson's credibility. Accordingly, the Commissioner's motion for summary judgment is granted and Ms. Nelson's motion is denied.

The Clerk of the Court is directed to enter judgment in accordance with the above and close the file in the case.

This order disposes of Docket Nos. 13 and 14.

IT IS SO ORDERED.

Dated: October 22, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge